IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CR-39-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| LARRUS DANYELL JONES | ) | |

This cause comes before the Court on defendant's motion to suppress all evidence seized as a result of the seizure and search of defendant's person on October 22, 2012. A hearing was held on the pending motion before the undersigned on May 22, 2013, at Raleigh, North Carolina. For the reasons discussed below, defendant's motion is denied.

BACKGROUND

Defendant is charged in a four count superseding indictment with one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924, and one count of using a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).

On October 22, 2012, police officers in Wilson, North Carolina were patrolling an area looking for a suspect who had earlier fled from police. The suspect was a known violent offender and gang member. At approximately 2:16 a.m., Officer Powell with the Wilson Police Department observed a Ford Taurus driving slowly down Lane Street toward a cemetery and near where another officer, Officer Siegel, was parked in his marked patrol car. Both officers observed the Taurus stop abruptly and park in front of the cemetery office. There were no open business or

residences on the block on which the Taurus parked.

From his patrol car, Officer Siegel observed defendant exit the Taurus and begin walking away from Officer Siegel's patrol car. Officer Siegel also observed defendant flick a small dark object that he believed to be a firearm into the grass near the road. Officer Siegel used his patrol car PA system to direct defendant to stop and raise his hands. Defendant continued to walk away from Officer Siegel. Officer Powell then positioned his patrol vehicle near the intersection of Minchew and Lane Streets; both officers continued to ask defendant to stop, but defendant continued walking past Officer Powell and through the intersection at Minchew and Lane.

Defendant then reached both hands into his front waistband, and Officer Siegel observed defendant place an object in his mouth. Defendant continued to walk away, but eventually complied with the officers and stopped. Defendant was handcuffed, the officers notice a strong odor of marijuana, and a bag of marijuana was produced from defendant's mouth. A search of defendant's person revealed a digital scale and sandwich bags. Officer Siegel returned to the area where he had seen defendant flick an object and recovered a .38 caliber revolver from the grass near the road.

## DISCUSSION

At the outset, the Court notes that defendant conceded at the hearing that the gun he abandoned should not be suppressed. The Court addresses defendant's motion therefore only as to the marijuana seized from his person on October 22, 2012. Defendant contends that the police officers lacked a reasonable articulable suspicion to seize defendant. The Court disagrees.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. Amend. IV. "A person is seized by the police and thus entitled to challenge the government's

2

actions under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 524 (2007) (internal quotations and citations omitted). Where no physical force is used, an officer makes only an attempted seizure by show of authority if the defendant does not actually submit to the authority. *Id.* at 524 (citing *California v. Hodari D.*, 499 U.S. 621, 626 n.2 (1991)). An attempted seizure is beyond the scope of the Fourth Amendment. *Cnt'y of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998).

Though Officer's Siegel's command to defendant over his PA system constitutes a show of authority, defendant failed to submit to such authority until he stopped, raised his hands, and was handcuffed by Officer Powell. Defendant continued to walk away from both officers, even passing Officer Powell by, in the face of numerous commands to stop. Because walking away from the officers does not demonstrate that defendant passively acquiesced to the officers' show of authority, *United States v. Black*, 707 F. 3d 531, 537 n.3 (4th Cir. 2013), the relevant inquiry requires a finding that defendant was not in fact seized until he submitted to the officers' show of authority by stopping. *See e.g. United States v. Smith*, 594 F.3d 530, 539 (6th Cir. 2010) (defendant who did not passively acquiesce to show of authority, but rather tried to push past officers in order to leave, not seized).

Having determined that defendant was seized when he submitted to the officers' authority, the Court next considers whether the seizure of defendant was reasonable. A legitimate and restrained investigative stop by police is subject to limited Fourth Amendment scrutiny. *Terry v. Ohio*, 392 U.S. 1, 13 (1968). In order to justify such an intrusion into the constitutionally protected interests of a private citizen, "the police officer must be able to point to specific and

3

articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. That is to say, such curtailment of a person's liberty must be supported by a reasonable and articulable suspicion that the person is engaged in criminal activity. *Reid v. Georgia*, 448 U.S. 438, 440 (1980).

The following facts support the officers' reasonable, articulable suspicion that defendant was engaged in criminal activity. The area in which defendant was seized was known to the officers as a high-crime area, *United States v. Moore*, 817 F.2d 1105, 1107 (4th Cir. 1987), and defendant's suspicious behavior began when, seemingly in response to and after having just passed a marked patrol vehicle, defendant stopped his vehicle short, parked it not in a parking area or where cars would normally be parked during the day, and exited. Upon defendant's exit from his vehicle, he walked *away* from a marked patrol car and was observed by Officer Siegel to flick what was believed to be, based on its shape and size, a firearm into the grass; Officer Siegel had a clear and unobstructed view of this action from the distance of about two to three car lengths and is a long-serving senior officer with the Wilson Police Department. It is clear from the evidence that Officer Siegel had a reasonable articulable suspicion at this point that defendant had noticed police presence and, in anticipation of their engagement of him, decided to stop his vehicle and discard his firearm in a concealed manner in the hope that it would not be detected.

As defendant continued to walk away from his vehicle and Officer Siegel, Officer Powell observed defendant turn away from his line of sight while walking toward him, moving his hands toward the front of his person, and stated the he believed defendant may have been reaching for a weapon. It was at that time that Officer Siegel observed defendant reach his hands into his front waistband and put something in his mouth; based on Officer Siegel's training and experience, it

4

would be reasonable to believe that defendant may have been attempting to conceal or destroy contraband. Finally, defendant's failure to heed both officers' repeated commands to stop is a factor that may be considered in determining whether the officers had a reasonable articulable suspicion that defendant was involved in criminal activity. *See United States v. Lender*, 985 F. 2d 151, 154 (4th Cir. 1993) (defendant's presence in a high crime neighborhood in the early hours of the morning coupled with defendant's evasive conduct in walking away from officers sufficient to support reasonable articulable suspicion of criminal activity). Officer Powell testified that both officers had repeatedly commanded defendant to stop, and were in fact yelling their commands at one point, and that defendant ignored them and continued walking.

All of the foregoing facts, when taken together along with the rational inferences that could be drawn from them, support a finding that the officers had a reasonable and articulable suspicion that defendant was engaged in criminal activity. The most salient facts upon which the Court has relied are defendant's suspicious behavior in stopping short after passing a marked patrol car, that a seasoned police officer witnessed defendant discard what he believed to be a firearm, defendant's evasive behavior in walking away from two officers who were commanding him to stop, and defendant's retrieval of an object from his waistband which an officer reasonably believed could have been a weapon. Because a reasonable articulable suspicion supports the officers' seizure of defendant, no Fourth Amendment violation has occurred and defendant's motion to suppress is denied.[1]

---

[1] Recent Fourth Circuit cases relied upon by defendant to argue that reasonable suspicion is lacking are easily distinguished from the instant matter wherein defendant was not only observed discarding a firearm but also repeatedly evaded officers by walking away. *See e.g. United States v. Massenburg*, 654 U.S. 480 (4th Cir. 2011) (facts supporting officers' suspicion consisted only of vague anonymous report of gunfire in area where defendant stopped and

5

## CONCLUSION

For the reasons discussed above, defendant's motion to suppress [DE 24] is DENIED.

SO ORDERED, this 29 day of May, 2013.

*[signature]*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

---

defendant's nervous behavior consisting only of refusal to consent to frisk and downward glances); *United States v. Digiovanni*, 650 F.3d 498 (4th Cir. 2011) (clean car, presence of hanging shirts and hygiene bag, minimally nervous behavior, and potentially suspicious travel itinerary insufficient basis upon which to form a reasonable and articulable suspicion of criminal activity).

6